```
1
                    UNITED STATES DISTRICT COURT
2                   EASTERN DISTRICT OF LOUISIANA

3    *************************************************************
     DWIGHT WILLIAM ECKERT, SR.,
4
                             Civil Action No. 17-7022
5    VS.                     Section "G"
                             New Orleans, Louisiana
6                            March 28, 2018 at 11:22 a.m.

7    ADMINISTRATORS OF TULANE EDUCATIONAL FUND, ET AL.,
     *************************************************************
8

9

10
                     TRANSCRIPT OF MOTION HEARING
11         HEARD BEFORE THE HONORABLE KAREN WELLS ROBY
                   UNITED STATES MAGISTRATE JUDGE
12

13

14   APPEARANCES:

15   FOR THE THIRD-PARTY PLAINTIFF:

16       On behalf of Administrators of Tulane Educational Fund:

17                                     MARY L. DUMESTRE
                                       Stone, Pigman, Walther,
18                                     Wittman, LLC
                                       546 Carondelet Street
19                                     New Orleans, Louisiana 70130

20   FOR THE THIRD-PARTY DEFENDANTS:

21       On behalf of U.S. Fire Insurance Company, Westchester
         Fire Insurance Company and Crum & Forster Specialty
22       Insurance Company:

23                                     JAY M. LONERO
                                       Larzelere, Picou, Wells,
24                                     Simpson, Lonero, LLC
                                       3850 N. Causeway Blvd
25                                     Metairie, Louisiana 70002
```

```
 1      On behalf of St. Paul Fire and Marine Insurance Company:

 2                              ROBERT T. VORHOFF
                                Garrison, Yount, Forte,
 3                              and Mulcahy, LLC
                                Simpson, Lonero, LLC
 4                              601 Bayshore Blvd
                                Tampa, Florida 33606
 5
        On behalf of ACE American Insurance Company and ACE
 6      Property and Casualty Insurance Company:

 7                              LAWRENCE G. PUGH, III
                                MAURA ZIVALICH PELLETERI
 8                              Pugh Accardo, LLC
                                1100 Poydras Street
 9                              Suite 3300
                                New Orleans, Louisiana 70163
10
     Court Audio Operator:      Sandra Simlin
11
     Transcribed by
12   Official Court Reporter:   Nichelle N. Drake, RPR, CRR
                                500 Poydras Street, B-275
13                              New Orleans, Louisiana 70130
                                (504) 589-7775
14

15      Proceedings recorded by electronic sound recording,
     transcript produced by official court reporter via computer.
16

17

18

19

20

21

22

23

24

25
```

1                    **P R O C E E D I N G S**

2                    (Call to order of the court.)

3          THE COURT:  All right.  Eckert versus the

4     Administrators of the Tulane Educational Fund.

5          You all don't agree on anything, right?

6          MS. DUMESTRE:  No.  Well, I have --

7          THE COURT:  You have the Interrogatories, Requests

8     for Admissions and Requests for Production?

9          MS. DUMESTRE:  Yes, Your Honor.  Which motion do you

10    want to hear first?

11         THE COURT:  Well --

12         MR. LONERO:  What motion do you want?

13         MS. DUMESTRE:  Yours.

14         MR. LONERO:  For leave to file --

15         MS. DUMESTRE:  Yeah.

16         THE COURT:  Wait.  For leave to what?

17         MS. DUMESTRE:  For leave to file an opposition that

18    he filed yesterday --

19         THE COURT:  Already done.  It's in my signing box to

20    sign.  Granted.  Let's move on.

21         MS. DUMESTRE:  Okay.

22         MR. LONERO:  Thank you.

23         MS. DUMESTRE:  There it is.  All right.

24         MR. LONERO:  Do you want to make an appearance?

25         THE COURT:  You all get to make an appearance for the

1    record.

2           MS. DUMESTRE:  Thank you.

3           MR. LONERO:  She said do you want to make an

4    appearance?

5           MS. DUMESTRE:  Huh?

6           MR. LONERO:  Make your appearance.

7           MS. DUMESTRE:  Mary Dumestre -- sorry -- for

8    Tulane -- the Administrators of the Educational Fund of

9    Tulane.

10          MR. LONERO:  Jay Lonero on behalf of Defendants

11   Westchester Fire Insurance Company, United States Fire

12   Insurance Company, and Crum & Forster Specialty Insurance

13   Company.

14          MR. VORHOFF:  Robert Vorhoff on behalf of St. Paul

15   Fire and Marine Insurance Company.

16          MR. PUGH:  May it please the Court, Your Honor, Larry

17   Pugh and Maura Pelleteri on behalf of ACE American Insurance

18   Company and ACE Property and Casualty.  We are not a subject

19   to the motion, but some of these issues may --

20          THE COURT:  May impact you.

21          MR. PUGH:  -- impact us, so we're here --

22          THE COURT:  I kind of figured with you and Maura

23   sitting on that bench.  She's usually up in front.

24          MR. PUGH:  We're happy to take the back seat in this

25   instance.

1        THE COURT: I'll let you.

2        MS. DUMESTRE: Mary Dumestre for Tulane.

3    We filed this Motion to Compel. One thing I want to

4    apologize to the Court, we -- I don't know if -- well, I know

5    you've read it all. We've been going back and forth so many

6    times trying to resolve it, but I've revised this memo

7    several times to try to accommodate the agreements. And one

8    thing I did not take out in here was the issue of who's on

9    first, which one of these insurers -- and not St. Paul --

10    ACE, Crum & Forster, Westchester, U.S. Fire, is actually

11    responsible for the U.S. Fire policy issued from '73 to '74.

12    I think I explained we have the evidence of that policy.

13    We believe we have evidence of that policy that should apply,

14    but early on we were told that, oh, in the '70s, Westchester

15    transferred responsibility for their policies either to ACE

16    or Crum & Forster, maybe U.S. Fire, and we could never -- in

17    two years, this case has been ongoing for two -- over two

18    years. No one will step up and admit to it. And I was going

19    to try to prove which one had it. But then I said, no, it's

20    a Westchester policy. If I get a judgment against

21    Westchester, it's Westchester's burden to prove who it was

22    transferred to. So I removed that from the issues that I

23    discussed. If you notice, I didn't discuss that.

24    Now, one of the things is the general objection to

25    producing electronically stored information, and we've gone

1    back and forth --

2         THE COURT:  There's a general objection?

3         MS. DUMESTRE:  Yeah.

4         THE COURT:  They're invalid.  Who did that?

5    You all know you don't do general objections.

6         MR. LONERO:  Your Honor, no.  What we did do,

7    however, at the beginning of the document was to advise that

8    pursuant to the rule -- and I apologize I can't think of the

9    number -- which specifically says if electronically stored

10   information is going to be overly burdensome, then it is not

11   discoverable.  And that is something that we do specifically

12   show in our opposition.

13   I think that when the substance of this is discussed, we

14   will see that it is a non-issue.  We have already stated that

15   we do not have any documents because we were brought in

16   during the litigation.  We do not have any pre-litigation

17   electronically stored documents nor do we have anything else

18   electronically stored other than what has been produced in

19   this case in January of 2016.  We've said that throughout our

20   documents.  There is nothing.

21        THE COURT:  Talk.  Let me hear.

22        MR. LONERO:  Sorry.

23        THE COURT:  I need to understand what he just said

24   and I don't quite get it.

25        MS. DUMESTRE:  Well, they did -- they did advise that

1    -- I guess it's not an objection.  They just told us, we're

2    not producing electronically stored documents.

3         THE COURT:  And their explanation to you is?

4         MS. DUMESTRE:  Because it would be unduly burdensome

5    or expensive.

6         THE COURT:  Well, so what?  That's in every case I

7    get.  Why is this case different?

8         MR. LONERO:  Your Honor, as we stated in our

9    opposition --

10        THE COURT:  What is the -- let me ask this question:

11   What are you seeking in the context of ESI?

12        MS. DUMESTRE:  I don't know what they have.  That's

13   the problem.

14        THE COURT:  Well, that is a problem because that

15   sounds like a phishing expedition.

16        MS. DUMESTRE:  Well, they have -- they produced from

17   the company RiverStone Management, electronically produced --

18   saved old documents from the 1970s, which is good.  We're

19   glad to have those.  They appear to have only searched in

20   RiverStone's computers.  I don't have any evidence that they

21   contacted anybody else.

22        THE COURT:  Such as?

23        MS. DUMESTRE:  Their London agency in Atlanta

24   involved issuing Tulane policies on -- on the paper of other

25   insurers.  The Crum & Forster, Crum & Forster's, did not

1    become part of RiverStone until after they were notified of

2    this claim.  I don't know what's in their electronic files.

3    I don't know what was transferred from Crum & Forster to

4    RiverStone.  I don't know what was transferred from U.S. Fire

5    electronically to --

6            THE COURT:  So specifically, what you're looking for

7    is what?

8            MS. DUMESTRE:  I want to see any kind of

9    documentation -- we're still looking for this policy.  We're

10   hoping to find it.

11           THE COURT:  No.  Then tell me what you're looking for

12   then.

13           MS. DUMESTRE:  I'm looking for any reference to the

14   policy.  All of these insurers claim that we do not have

15   enough information to prove that the lost policy exists.  I

16   disagree.  I think we have -- if you can prove a lost policy,

17   this is enough and you can in Louisiana.  But I don't have

18   information -- I don't know what they've searched at these

19   other places, and if they brought --

20           THE COURT:  So point -- this is what I want you to do

21   so I can make specific rulings.  Point me to the particular

22   request you've given them so I can assess that.  Because I

23   hear what you're saying, but what I get from lawyers is that

24   it doesn't always match up to what they wrote.  And if it

25   doesn't match up to what you wrote and what he has to assess,

1   then you may have a problem.

2          MS. DUMESTRE:  I do not have copies of what he sent

3   me last night after 8:00 o'clock and after 10:00 o'clock.

4          THE COURT:  What did you send last night?

5          MR. LONERO:  Defendant's supplemental responses, Your

6   Honor, which will not have any further impact on what

7   counsel's discussing.

8      I may be in a better position -- I'm just trying to

9   assist the Court.  I may be in a better position to explain

10  the corporate circumstances which we've discussed many times

11  with counsel and which are very complicated.  I can

12  appreciate that counsel may not understand completely all of

13  the inner workings or back workings which are going on in

14  this particular case with these various insurers.

15         THE COURT:  Will that help me figure out what the

16  heck is going on?

17         MR. LONERO:  I think it will help --

18         THE COURT:  Let me hear from you then.

19         MR. LONERO:  -- eventually, Your Honor.

20         MR. VORHOFF:  Subject to counsel's continued

21  argument --

22         THE COURT:  I'm going to have you come back.  I just

23  want to -- if I don't think it's helping me, I'm going to

24  stop you midstream and go back to Mary.  Okay?

25         MR. LONERO:  That's perfectly fine, Your Honor.

1          MS. DUMESTRE:  There are document requests -- all

2     these objections kind of intertwine too --

3          THE COURT:  I just want to see the request that you

4     say they have not adequately searched and they've asserted

5     the objection to ESI so I can figure out if your question is

6     appropriately characterized or not.

7          MS. DUMESTRE:  Request -- okay.  I don't know which

8     one you have in front of you.

9          THE COURT:  You tell me Document -- look at the --

10          MS. DUMESTRE:  I'm looking at Crum & Forster's

11     responses.

12          THE COURT:  No.  No.  No.  Look at the top.  It says

13     Document 29-something.  If you have a file -- do you have a

14     file copy like me or no?  Or is it your original, Mary?

15          MS. DUMESTRE:  I probably don't.

16          THE COURT:  Well, then you're looking at -- let me go

17     this way then.  You said Crum & Forster's --

18          MS. DUMESTRE:  Oh, that's our Motion to Compel.

19          THE COURT:  Right.  But there are attachments to it.

20          MS. DUMESTRE:  Oh, the exhibits.  Yeah.  I had

21     Exhibit B.  All right.  All right.  I got you.  I have

22     Exhibit B.

23          THE COURT:  All right.  Look at the top.  Is it 29 --

24     that's 29-2, right?  You see at the very top?

25          MS. DUMESTRE:  It doesn't have it on there.

1          THE COURT:  See, mine has this little line.

2          MS. DUMESTRE:  Okay.  Good.  But that --

3          THE COURT:  Yes, ma'am.

4          MS. DUMESTRE:  They're all the same.

5          THE COURT:  All right.  So tell me where you are.

6          MS. DUMESTRE:  Okay.  The first stack is

7   Interrogatories, but I really want to go back to request

8   permission -- no, it's got to be in the Requests for

9   Production of Documents.

10      So many of these are the legal relationships that we're

11  not dealing with --

12         THE COURT:  Yeah.  That's what I'm looking at.

13         MS. DUMESTRE:  Yeah.  And I gave up.

14      One of them, the document retention policies of all three

15  of the insurers, in this one, it is at Page 11 of the Request

16  for Production, Request Number 13.

17         Now, they've also objected --

18         THE COURT:  Well, can I tell you what I see?

19         MS. DUMESTRE:  Yes.

20         THE COURT:  You're looking for a specified period of

21  time, are you not?

22         MS. DUMESTRE:  Yes, I am.

23         THE COURT:  Your request isn't.

24         MS. DUMESTRE:  We discussed that and I limited -- at

25  the first conference call, Rule 37, I limited it to really I

1   think '73, '74.  Correct me if I'm wrong, it might be the

2   '70s, but I think it was '73, '74.  And then --

3        THE COURT:  Let me read.

4        MS. DUMESTRE:  Oh, that's you, Jay.

5        MR. LONERO:  I thought she said let her read.

6        THE COURT:  No.  I'm reading the response.

7        MS. DUMESTRE:  Okay.

8        THE COURT:  Jay, I overrule your all's objections.

9   Based on the limitation to years '73 and '74, I think you

10  have to look.

11       MR. LONERO:  Yes, Your Honor, and we do have

12  supplemental responses we provided and I can address that now

13  or I can --

14       THE COURT:  Do I have a copy of them?

15       MS. DUMESTRE:  Huh-uh.

16       THE COURT:  I don't think I do --

17       MR. LONERO:  No, Your Honor.

18       THE COURT:  -- because that wasn't with your motion

19  to --

20       MS. DUMESTRE:  I just got them --

21       THE COURT:  -- to supplement, right?

22       MS. DUMESTRE:  -- after 8:00 o'clock last night.  Two

23  of them came in after 10:00 o'clock last night, another one.

24  I didn't see them until this morning and I haven't had time

25  to look at them.

1          MR. LONERO:  This is too much material I recognize

2    for the Court to read, but if the Court would like it, I can

3    provide it to you.  These are the supplements and I can

4    explain --

5          THE COURT:  Do you -- do you have a copy?

6          MR. LONERO:  Yes.  Of the supplements?

7          THE COURT:  A copy for you?  Is that a copy for me?

8          MR. LONERO:  This is a copy for the Court.

9          THE COURT:  Okay.  I'll look at it.

10         MR. LONERO:  Your Honor, I can address that issue now

11   or I can address it --

12         THE COURT:  No.  I want -- I want you to address it

13   now.

14         MR. LONERO:  No?

15         THE COURT:  Yeah.  Yeah.

16         MR. LONERO:  Jay Lonero for defendants as previously

17   noted.

18      Simply, Your Honor -- and I do have to start here.

19   First, with regard to corporate statements that -- or

20   statements I make regarding the corporations and the

21   companies, for purposes of the record, I will state to the

22   best of my knowledge the relationship to these companies.  I

23   wouldn't want this record at some time in the future to be

24   used because I'm not 100 percent certain of the corporate

25   relationships.

1          What occurred, Your Honor, is there's a company called

2     RiverStone Claims Management.  It is not an insurance

3     company.  It is a claims management company and RiverStone --

4     and counsel is well aware of this.  We have had numerous

5     discussions and have attempted to work this out.

6          RiverStone is a claims management company and it

7     administers certain claims for various insurance companies.

8     In this instance, it administers some claims for Westchester,

9     U.S. Fire, and Crum & Forster.  RiverStone is an entity of --

10    within itself and RiverStone administers certain claims, but

11    RiverStone does not know what the retention policy of the

12    original company -- let's say for Crum & Forster -- in 1973

13    or 1974 was.  RiverStone does not know what the document

14    retention policy is for Westchester in 1973 or 1974 was.

15         I can certify to the Court and I think counsel will agree

16    my client has been working --

17              THE COURT:  RiverStone's not a party.

18              MR. LONERO:  No, ma'am, they're not.

19              THE COURT:  Okay.  I don't expect them to certify.

20              MR. LONERO:  So RiverStone though has been working

21    with other companies who may have information about what

22    occurred in 1973 and 1974 regarding the retention policies of

23    Westchester.

24              THE COURT:  This is what I don't get.  Maybe that's

25    not clear to me.  Are these insurance companies that are

1  being sued still in existence or defunct?

2      MR. LONERO:  They are still in existence.

3      THE COURT:  Okay.  So why don't you go to them and

4  say, hey, guys, search your records and tell me what your

5  retention policy was in '74, and if you don't know, give me

6  somebody who can certify by affidavit that you looked and you

7  don't know?  That's not hard.

8      MR. LONERO:  RiverStone has attempted to do that --

9      THE COURT:  No.  No.  No.  No.  No.  You're missing

10  me.  Westchester, United States Fire Insurance Company and

11  Crum & Forster need to do that.  You represent each of them.

12  Yes?  Yes?

13      MR. LONERO:  Yes, I do.

14      THE COURT:  Then you get on a plane.  You go there

15  and you say, I've got this crazy lady in New Orleans that's

16  making me make you all go search these files.  But this thing

17  with RiverStone is not working for me because they're a

18  claims management company.  They're not going to have the

19  policy and all I'm going to get is the runaround and

20  third-party information.  Go directly to the source.  You got

21  30 days on that.

22    What else?

23      MR. LONERO:  That's fine, Your Honor.  I would

24  only --

25      THE COURT:  I'm giving you time because I know you

1 | got to catch a flight.

2 |       MR. LONERO:  And I greatly appreciate that.  I would

3 | only note for the Court, I'm not instructed by those

4 | companies.  Westchester Insurance Company is not the

5 | insurance company that has instructed me in this case.  They

6 | do not direct me in this case.  They do not pay me in this

7 | case.

8 |       THE COURT:  I don't care.

9 |       MR. LONERO:  Crum & -- so I don't know that I will

10 | have access to their --

11 |       THE COURT:  Who do you represent?

12 |       MR. LONERO:  I represent certain insurance policies

13 | that are maintained by a company called RiverStone Claims

14 | Management.

15 |       THE COURT:  Who do you represent?

16 |       MR. LONERO:  I represent United States Fire Insurance

17 | Company, Crum & Forster Specialty Insurance --

18 |       THE COURT:  You go to them.  They're your client.

19 |       MR. LONERO:  Okay, Your Honor.  I will do that.

20 |       THE COURT:  I don't care what the claims management

21 | people say.

22 |       MR. LONERO:  That's fine.

23 |     With regard to that issue, I received an e-mail late last

24 | night or early this morning with regard to Crum & Forster,

25 | one of the three, they have located some information on that

1   particular issue, the document retention policy.  I do not

2   know what it is.  I have not seen it yet --

3        THE COURT:  Yeah.  I see where you said you've given

4   up 21 pages of material, but they're not attached to this

5   response.

6        MR. LONERO:  No, Your Honor.  Counsel has long had

7   that and I don't think those particular pages, the privilege

8   log, 21 pages --

9        THE COURT:  No, not the privilege log.  First of all,

10  there shouldn't be a privilege log with regards to a

11  retention policy, but -- because it's a policy of a company

12  for which no privilege applies.  So why did you give them a

13  privilege log?

14       MR. LONERO:  That is not -- the 21 pages are not the

15  retention policy, Your Honor.  The 21 pages are documents.

16  One of the questions from Tulane was please provide documents

17  that show that you performed a search for certain insurance

18  policies.  Those are the 21 pages.  There are no pages that I

19  have regarding document retention policies, so that's a

20  separate issue.

21       THE COURT:  Okay.  Here you say -- see, what you're

22  telling me -- what you're telling me and what's going on in

23  real terms, right, are not matching up.

24       MR. LONERO:  I'll try to explain, Your Honor.

25       THE COURT:  Well, let me tell you what I think is

1   going on.

2        MR. LONERO:  Okay.

3        THE COURT:  You're going to RiverStone Claims

4   Management and saying, hey, guys, get me the retention policy

5   for Westchester.  And then you're responding on behalf of

6   Westchester saying that Westchester's looking and is still

7   trying to investigate to get the information with regards to

8   their retention policies for '73 and '74, which is not a true

9   statement.  That is not a true statement based on what is

10  factually occurring in the case.  You have an intermediary

11  presumably connecting with Westchester, which I'm not so sure

12  that they are, and coming back and feeding information to

13  you.  But they're not a party in this case.  Westchester's a

14  party in the case.  That's where my problem is coming in.

15       MR. LONERO:  I can certify to the Court that actually

16  -- that they are communicating directly with them.  I

17  understand the Court's issue --

18       THE COURT:  Are you?  Are you?

19       MR. LONERO:  I am through counsel, Your Honor,

20  because they --

21       THE COURT:  Are you?

22       MR. LONERO:  I am not communicating directly --

23       THE COURT:  Then you are not.  This representation is

24  false.

25       MR. LONERO:  But I don't know what the exact words

1  are.  I do want the Court to understand --

2       THE COURT:  I understand the pickle they put you in,

3  but I'm going to try to get you out of it.

4       MR. LONERO:  I understand, Your Honor.

5       THE COURT:  And I'm telling you, you better go

6  directly -- because you have a duty to the Court.  You have a

7  duty to counsel and I don't know who's the eyes behind the

8  curtain on this thing, who's telling you they're doing stuff,

9  but I'm not comfortable with what they're doing, so you

10 better go to the source.

11      MR. LONERO:  I understand that correctly, Your Honor.

12 I do -- again, just for the record, I want to note that I

13 have all evidence including counsel for ACE, who is here,

14 which oddly owns the company called Westchester, and I think

15 they can certify that those companies -- the company,

16 Westchester, itself is actively looking for the documents

17 from '73 to '74.

18      THE COURT:  I don't know that.  You don't know that.

19      MR. LONERO:  Not withstanding that we will go

20 there --

21      THE COURT:  You believe it to be true because you've

22 not made the request.  I don't trust that.

23      MR. LONERO:  I understand, Your Honor.  We will -- we

24 will --

25      THE COURT:  I'm sorry.  I've been here too long.  Go

1  straight to the source.

2       MR. LONERO:  I understand, Your Honor.  We will go to

3  those -- to those parties.

4       THE COURT:  So 30 days on that -- that's Number 13 on

5  the retention.

6     What's the next issue?

7       MS. DUMESTRE:  Still on the -- Number 14, next page,

8  same thing of Crum & Forster, but he's not going directly to

9  Crum & Forster and Crum & Forster --

10      THE COURT:  Hold up.  Is it the same for all?  Are

11 the questions the same for each party?

12      MS. DUMESTRE:  Uh-huh.  Yes.

13      THE COURT:  So let me be clear so that Brian --

14 so you -- if I say 13, it applies to all three, right?  I'm

15 not going to argue about the rest.  So as for 13, I'm not

16 satisfied with the response.  I think there's a breakdown in

17 the communication.  I always tell my client -- my lawyers to

18 the source -- go to the source.

19    Now what's the next problem?

20      MS. DUMESTRE:  The next request -- and all the

21 requests are the same --

22      THE COURT:  I understand and Brian knows that that

23 means they apply -- my ruling --

24      MS. DUMESTRE:  Do they have different numbers?

25      THE COURT:  And it's your obligation to give me the

1   numbers that correlate.

2   　　　　MS. DUMESTRE:  I'll give them to you.

3   　　　　THE COURT:  All right.

4   　　　　MS. DUMESTRE:  In Number 14, I've asked for

5   information regarding the search.  Now, the 21 pages, Mr.

6   Lonero is correct --

7   　　　　THE COURT:  Search for?

8   　　　　MS. DUMESTRE:  For documents and this particular

9   document is for Crum & Forster.  I want the same for

10  Westchester and --

11  　　　　THE COURT:  I understand that.  You don't have to

12  keep saying that.  Just tell me, search for what?

13  　　　　MS. DUMESTRE:  For any evidence of the policies that

14  might cover the legal liabilities of Tulane for the years

15  1973 and '74.  Now, I have gotten pages that show -- document

16  the search at RiverStone.  I'm not complaining about that.  I

17  just want documentation of the search at the three insurers.

18  　　　　THE COURT:  He said he produced 21 pages on Number

19  14.

20  　　　　MS. DUMESTRE:  That was just the computer search of

21  the RiverStone files.  That's it.

22  　　　　THE COURT:  Is that what that is?

23  　　　　MR. LONERO:  Yes, Your Honor, with --

24  　　　　THE COURT:  But it says Westchester produces.

25  Westchester ain't producing nothing.  RiverStone is.

1        MR. LONERO:  Your Honor, Westchester -- I -- I'm --

2  Your Honor, the answer to the question is legally, RiverStone

3  has complete and full authority to act on behalf of and bind

4  Westchester Fire Insurance Company with regard to all

5  policies for which Tulane has sued --

6        THE COURT:  A claims administrator has that

7  authority?

8        MR. LONERO:  Yes, Your Honor, for this -- for this

9  information because this is a circumstance I was trying to

10  explain earlier.  This is not a circumstance where they are a

11  third-party administrator and are administrating for this

12  company.  This company, RiverStone -- and this is loose

13  wording, but I know it's correct.

14    RiverStone has purchased these policies.  At this moment,

15  the company that's still in existence, Westchester, and the

16  company that's still in existence, Crum & Forster, and the

17  company U.S. Fire, they have absolutely nothing to do with.

18  They have no authority over.  They have no money, which will

19  pay --

20        THE COURT:  But they will certainly show when the

21  transfer of the policy occurred.

22        MR. LONERO:  They, one would think, can show when the

23  transfer of the policies occurred.

24        THE COURT:  Right, which is the issue in the case.

25        MR. LONERO:  It is.  That is --

1          THE COURT:  Yeah.

2          MR. LONERO:  -- something that has been researched

3     and what I can tell the Court --

4          THE COURT:  Researched, not by Westchester, but

5     researched by RiverStone.

6          MR. LONERO:  I would -- Your Honor, no.  Westchester

7     itself, the insurance company over here, Westchester.

8        I can short-circuit this, Your Honor.  This morning --

9     and counsel knows we've been working on this and I know that

10    this is late.  This morning, I received the e-mail from my

11    client, RiverStone, signed, that says there finally has been

12    an agreement between Westchester and ACE, which is a

13    defendant in this case, and the ACE companies, not this ACE,

14    have -- now own a company called Westchester, but my client,

15    as administrator of Westchester of these files, has accepted

16    responsibility for this case.

17       So going forward, we have an agreement where there will

18    be one party, and the whole point was to try to stream line

19    this.  We have a stipulation that has already been prepared.

20    I discussed it with counsel.

21         THE COURT:  Then tell your client to produce the

22    policy.

23         MR. LONERO:  Your Honor, my client has certified in

24    these responses that after diligent searches my client cannot

25    locate the policy.  Counsel for --

1          THE COURT:  Who from RiverStone has conducted the

2    search?

3          MR. LONERO:  Ms. Carol Salvatore, which is on these

4    documents and she is the --

5          THE COURT:  And what is her position at RiverStone?

6          MR. LONERO:  She is the head of the search databases.

7    What she does is, since RiverStone is a company that buys

8    prior books of business of policies, RiverStone --

9          THE COURT:  They buy the business, but do they buy

10   the policy itself?

11         MR. LONERO:  They -- I'm not sure of the legal --

12   they buy the policy itself if there is such a policy, yes.

13   They will have --

14         THE COURT:  Then how can you buy a book of business

15   for something you don't know if you insured if you don't get

16   the policy?

17         MR. LONERO:  Because they buy the books of business.

18   And in this instance, counsel is looking for a policy that is

19   allegedly DCL073218.  RiverStone can certify that it has

20   searched its database with the word Tulane in every possible

21   manner, and when it does that, it does not produce the

22   policy.

23         THE COURT:  How old is their database?

24         MR. LONERO:  I do not know but the database -- the

25   database has files in it that are well prior to 1973 and '74.

1    So if the -- because policies that would have been purchased

2    from some other company and I've worked on them regularly,

3    RiverStone will have a 1957 policy, a 1970 policy if they

4    have it.  The search by RiverStone, which these documents

5    have all been provided --

6         THE COURT:  Didn't you just tell me that your client

7    bought the policy?

8         MR. LONERO:  My client bought the book of business,

9    yes, and the policy --

10        THE COURT:  No.  See, you're saying two different

11   things.  They either bought the policy and the book or just

12   the book.

13        MR. LONERO:  No, not the policy, Your Honor.  This

14   particular policy --

15        THE COURT:  Then you -- then I don't care what your

16   client says.  You got to go back to Westchester.

17        MR. LONERO:  Well, I understand that and we're going

18   to --

19        THE COURT:  Right.  I don't care what your client

20   says because what you just told me is, they bought the book,

21   not the policy.  It's gamesmanship, but you're going to

22   Westchester.

23     What's the next question?

24        MR. LONERO:  All I was saying, Your Honor, is that we

25   can't locate that particular policy.

```
 1            THE COURT:  I heard you.

 2            MR. LONERO:  But we're going to all of the --

 3            THE COURT:  Oh, yeah.

 4            MR. LONERO:  Within 30 days, we're going to go to all

 5   of those parties.

 6            THE COURT:  Cop a flight.

 7            MR. LONERO:  I understand, Your Honor.

 8            THE COURT:  Or a couple of them.  I don't know if

 9   they're in the same area, but get to traveling.  Get you some

10   frequent flyers.

11      What's next?

12            MS. DUMESTRE:  Well, 14 addressed the evidence of

13   policies in effect from '73 to '74.  Number 15 asked

14   specifically for correspondence between Tulane and Crum &

15   Forster, Tulane and Westchester, Tulane --

16            THE COURT:  Okay.

17            MS. DUMESTRE:  -- and U.S. Fire.

18            THE COURT:  So let me say this.  As to 14, my same

19   ruling applies.

20            MS. DUMESTRE:  Uh-huh.

21            THE COURT:  15 --

22            MS. DUMESTRE:  It's the same issue.

23            THE COURT:  -- addressed -- well, we're not going to

24   keep asking for the same thing, Mary.  Pick one.

25            MS. DUMESTRE:  This is -- this is for the
```

1    correspondence.  We have in Tulane's files correspondence

2    between Crum & Forster and Tulane where they make comments

3    about --

4           THE COURT:  This is solely as to Crum & Forster or is

5    it -- does it apply to all three?

6           MS. DUMESTRE:  Crum & Forster is more important.

7           THE COURT:  So I can ignore Number 15 as to the other

8    two is what you're telling me?

9           MS. DUMESTRE:  I believe that's so.  I don't think

10   there's correspondence between --

11          THE COURT:  Okay.  Let's talk about Crum & Forster.

12          MS. DUMESTRE:  Number 15 for Crum & Forster, in 19 --

13   in the 1970s, Crum & Forster for some reason -- and, again,

14   I'm not -- I don't know who's on first on this.  For some

15   reason, the paper was issued on Westchester -- the policy was

16   issued on Westchester's paper.  Crum & Forster was the entity

17   that communicated with Tulane when they were renewing the

18   policy, buying the policy, renewing the policy and so forth,

19   and their language in my correspondence indicates that the

20   Westchester umbrella policy would drop down and provide

21   defense and indemnity if the prior policy, St. Paul, excluded

22   coverage for some reason.  It's not that elaborate, but it's

23   clear to me -- I teach insurance law.  It's clear to me what

24   the language meant.  I want to see if there's any other

25   communication in the Crum & Forster files.  And as I said --

1        THE COURT:  From what period?

2        MS. DUMESTRE:  From -- for the years 1973 and 1974.

3        THE COURT:  Well, I know you haven't been to Crum &

4   Forster, so you get to go there next.

5        MS. DUMESTRE:  Uh-huh.

6        THE COURT:  That only applies to Crum & Forster on

7   Number 15, but not as to the other parties.

8     What's next?

9        MS. DUMESTRE:  Uh-huh.  Well, I asked if they had

10  destroyed any -- provide any and all documents evidencing the

11  destruction of any --

12       THE COURT:  Well, you'll figure that out when you get

13  the retention policy, and given the fact that it's a 1970s

14  issued policy, my guess is some documents have been purged.

15       MS. DUMESTRE:  Uh-huh.

16       THE COURT:  That would not surprise me because

17  they're not -- they don't necessarily have to keep it unless

18  they have policies out there that would cover a risk.

19       MS. DUMESTRE:  I would ask that he cover these when

20  he visits the different companies because they've never been

21  asked directly.

22       THE COURT:  I think -- which number were you just

23  referring to?

24       MS. DUMESTRE:  16.

25       THE COURT:  I think 16 is subsumed within 13, so he

1    only has to ask once.

2         MS. DUMESTRE:  Okay.  Good.  Good.

3      And I think -- the next ones start with where I'm asking

4    about assumed by the other company, but I thought --

5         THE COURT:  What number?

6         MS. DUMESTRE:  I thought I'd be able to get that.  I

7    asked him to produce --

8         THE COURT:  What number?

9         MS. DUMESTRE:  Number 18.

10        THE COURT:  So we're skipping 17?

11        MS. DUMESTRE:  Yes.  17 was asking about the assumed,

12   which policies were assumed, which we've not -- we're not

13   going there.

14        THE COURT:  All right.  So we're on 18.

15        MS. DUMESTRE:  18.  It's a Crum & Forster 18.

16        THE COURT:  Oh, not -- and this doesn't apply to the

17   other parties, correct?

18        MS. DUMESTRE:  No, it applies -- this one applies to

19   the other ones.

20        THE COURT:  Across the board?

21        MS. DUMESTRE:  Uh-huh.  Uh-huh.

22        THE COURT:  All right.  So 18.

23        MS. DUMESTRE:  And I'll give Brian the corresponding

24   numbers for each of the discovery requests.

25      "Please produce any and all copies of form or facsimile

 1 | excess and/or umbrella policies issued by Crum & Forster
 2 | and/or Westchester for the years 1970 to 1980 that were
 3 | issued in the state of Louisiana."  An insurance company has
 4 | to have approval of the form they use with the state of
 5 | Louisiana.
 6 |         THE COURT:  Could you not get that same information
 7 | from the State of Louisiana --
 8 |         MS. DUMESTRE:  I tried.  They don't have it.
 9 |         THE COURT:  -- Insurance Department?
10 |         MS. DUMESTRE:  They don't have it.  I tried.
11 |         THE COURT:  And why would we do that for a ten-year
12 | period as opposed to the two-year period?
13 |         MS. DUMESTRE:  Because often they will have a
14 | policy -- I mean, we can limit it to the two-year period --
15 |         THE COURT:  Well, my thought is, if you want them to
16 | look, I'm not going to make them look and produce for 10
17 | years because it's irrelevant.
18 |         MS. DUMESTRE:  So if you can limit it -- limiting to
19 | '73 and '74 is fine with me.  Sometimes the policy is -- is
20 | approved like in 1972 and they use it through the year.
21 |         THE COURT:  I'll permit '72 through '74, but not --
22 |         MS. DUMESTRE:  All right.  That's good.
23 |         THE COURT:  -- 1970 to 1980.
24 |         MS. DUMESTRE:  And that's for all three.
25 |         THE COURT:  Okay.  Now, are we just looking for one

1    policy or are we looking for three policies since I have

2    three carriers?

3         MS. DUMESTRE:  It's one policy.  It's for three

4    carriers.

5         THE COURT:  That may have transferred to three

6    different entities?

7         MS. DUMESTRE:  One of the three, yeah, but we don't

8    which one.

9         THE COURT:  Okay.  All right.

10         MS. DUMESTRE:  And it's a three-year policy, but

11    that's not relevant.  It covers 1973 and 1974.

12         THE COURT:  I understand.

13      What's next?

14         MS. DUMESTRE:  Okay.  Number 19 -- well, that's

15    probably too -- I'm not going to go to Number 19.  He's asked

16    me the same thing, please produce all documents that --

17         THE COURT:  Then we don't need to talk about it.

18    Give me the next one.

19         MS. DUMESTRE:  Yeah.

20         THE COURT:  What's the next one?

21         MS. DUMESTRE:  Settlement agreements and/or judgments

22    in court arbitration panel in which you were involved that

23    resulted from a claim involving a lost policy that otherwise

24    could -- or otherwise could not be located.  And I did

25    limit it -- limit those to policies from the '70s.

1    THE COURT:  Relevancy?

2    MS. DUMESTRE:  I'd like to know how it was treated.

3 They claim --

4    THE COURT:  Who cares.

5    MS. DUMESTRE:  Well, they claim that we don't have

6 enough evidence to prove the policy --

7    THE COURT:  My point is, who cares.  It's not your

8 policy that you're looking for.

9    MS. DUMESTRE:  Okay.

10    THE COURT:  I sustain his objection on relevancy.

11 I'm sure he asserted it.

12  Did you not?

13    MR. LONERO:  Yes, Your Honor.

14    THE COURT:  I sustain it.

15    MR. LONERO:  And we maintain that one.

16    THE COURT:  All right.

17    MS. DUMESTRE:  Okay.  Well, I asked him if they had

18 any evidence to show.  One issue they raised was that they

19 claim that the Westchester umbrella policy followed the form

20 of the St. Paul underlying policy, which has a 36-month --

21 well, St. Paul contends had a 36-month exclusion.  There's no

22 evidence in the files --

23    THE COURT:  Do you have a copy of the St. Paul

24 policy?

25    MS. DUMESTRE:  I do.

```
 1          THE COURT:  Does it have a 36-month exclusion?

 2          MS. DUMESTRE:  No.

 3          THE COURT:  Okay.  So where are we going?

 4          MS. DUMESTRE:  Uh-huh.

 5          THE COURT:  I'm confused.

 6          MS. DUMESTRE:  Uh-huh.  But they're still contending

 7   it did.

 8          THE COURT:  Who cares what they say if it doesn't.

 9          MS. DUMESTRE:  Okay.

10          THE COURT:  That means they didn't read the darn

11   policy before they said something.  Right?

12          MS. DUMESTRE:  So -- wait, that's you.

13          MR. VORHOFF:  Your Honor, I represent St. Paul, and

14   with all due respect, Tulane doesn't have the entire policy.

15          THE COURT:  Well, then give it to them.

16          MR. VORHOFF:  We cannot give the entire policy and

17   we --

18          THE COURT:  Then how can you -- first of all, if

19   you're asserting some kind of exclusion and you don't have a

20   policy, you can't prove your exclusion.

21          MR. VORHOFF:  We have --

22          THE COURT:  It's going to be construed against you.

23          MR. VORHOFF:  We have the forms that St. Paul --

24          THE COURT:  I don't care about your form.  Again, she

25   wanted forms.  Forms are irrelevant.
```

 1          MR. VORHOFF:  Well --

 2          THE COURT:  Where's your actual policy?  It's your

 3   job to keep your policy.  Your policy is your contract.  A

 4   form doesn't make the basis of your contract.  You could have

 5   altered it based on your relationship with Tulane.  How do I

 6   know?  I'm just saying.  So you can't stand before me and say

 7   she doesn't have the whole policy so therefore she doesn't

 8   know and you're relying upon a form which we don't know if it

 9   was -- actually became and converted to the policy.

10          MR. VORHOFF:  Judge, all I'm saying is, one of the

11   issues in this case is Tulane's asserting that they have the

12   policy and our assertion is they don't have the entire policy

13   to prove coverage.  And that's all I'm interjecting here.

14          THE COURT:  Thank you.

15          MR. VORHOFF:  I don't want to get --

16          THE COURT:  Whatever you have --

17          MR. VORHOFF:  -- wrapped up in that issue here --

18          THE COURT:  Have you not given them the whole policy?

19   And why don't you have your whole policy?

20          MR. VORHOFF:  We have given them everything we have,

21   and we have given them the forms that were used at the time

22   that we have that -- we have contained the entire policy if

23   it was available.

24          MS. DUMESTRE:  But it's a form of proof for you in --

25          THE COURT:  Like I said, it ain't proof.  Keep it

1    moving.

2       Let's talk about the -- I hear what his position is.

3    That's his problem.  Just like you have your problems, he's

4    got his problems.

5          MS. DUMESTRE:  Uh-huh.  So what I wanted them to

6    produce was -- if it did follow the form and if the 36-month

7    exclusion were actually in the policy or accepted by the

8    Court, even though it's not in the policy, Westchester is

9    claiming that they -- well, all the insurers are claiming

10   that they followed form, which is not true, for the employer

11   liability coverage.

12         THE COURT:  Well, we're going to find out what he has

13   because he's going to all three and he's going to look for

14   the policy and we're not going to rely on RiverStone.

15         MS. DUMESTRE:  Can we include 20 -- well --

16         THE COURT:  So which one were you talking about?

17         MS. DUMESTRE:  21.

18         THE COURT:  And 21 is saying what?

19         MS. DUMESTRE:  We're asking for the documents

20   electronically stored --

21         THE COURT:  21 is not in the motion my law clerk

22   says.  I'm not dealing with it.

23         MS. DUMESTRE:  Okay.

24         THE COURT:  Thank you, Brian.

25         MS. DUMESTRE:  Yeah, I didn't itemize in the

1    electronically stored because it was an across the board

2    objection, which covers all of them.

3        And I think that may be it unless I come into -- when we

4    get to some of the other ones that I have listed, more

5    specifically listed.

6            THE COURT:  Let's talk about the ones you listed.

7            MS. DUMESTRE:  Okay.  Now that's the electronically

8    stored issue.

9            THE COURT:  Actually -- so what you're saying is

10   that -- that's only limited to ESI, is what you're saying?

11           MS. DUMESTRE:  What we just discussed, uh-huh.

12           THE COURT:  Okay.

13           MS. DUMESTRE:  The next issue is the relevance

14   objections for -- let's see.  I even have -- I do have those.

15           THE COURT:  For which ones?

16           MS. DUMESTRE:  The response to Tulane's request for

17   -- all three of these responses to Tulane's request to

18   Admission Number 1, please admit that you are not claiming a

19   late notice defense to Tulane's claims for coverage asserted

20   against you in Tulane's complaint.

21           THE COURT:  So we're now on Requests for Admissions?

22           MS. DUMESTRE:  Well, they're kind of --

23           THE COURT:  I'm asking.  I'm trying to --

24           MS. DUMESTRE:  Yes.

25           THE COURT:  I'm trying to follow you.  What number --

1          MS. DUMESTRE:  Yes.

2          THE COURT:  -- is that?

3          MS. DUMESTRE:  Number 1.

4          MR. LONERO:  I'm sorry.  Which --

5          MS. DUMESTRE:  Oh, they all have the same Number 1,

6     yeah, Requests for Admissions.

7          MR. LONERO:  Thank you.

8          THE COURT:  I'm listening.

9          MS. DUMESTRE:  And they objected that Tulane -- that

10    Request Number 1 is neither relevant nor reasonably

11    calculated to lead to discovery of admissible evidence until

12    Tulane has met the --

13         THE COURT:  Well, first of all, that's an improper

14    objection to a request for admission.  So I'm striking the

15    objection.

16         MS. DUMESTRE:  Okay.  And then they also

17    throughout -- they -- throughout they objected that they

18    don't have to respond to discovery until Tulane meets its

19    burden of proving the policy exists.

20         THE COURT:  And that's an improper objection.  On a

21    request for admission, you either admit or deny, and if you

22    can't admit or deny, there's a very limited circumstance in

23    which you have to state it.  This doesn't qualify.

24         MS. DUMESTRE:  Uh-huh.

25         THE COURT:  So you're required to respond to 21.

1    What's next?

2         MS. DUMESTRE:  Okay.

3         THE COURT:  Is 21 the same for all three?

4         MS. DUMESTRE:  Yes.

5         THE COURT:  It applies -- Number 1.  I'm sorry.

6         MS. DUMESTRE:  Number 1 for all three.

7         THE COURT:  Applies to all three.

8    Okay.  So what's next?

9         MS. DUMESTRE:  Request for Admission Number 3, again,

10   that's the same for all three.  Please admit that the payment

11   made by Tulane to the Eckert lawsuit plaintiffs for dismissal

12   of all the Eckert lawsuit plaintiffs' claims against Tulane

13   was reasonable.  Again, same objections, neither relevant nor

14   reasonably calculated and they don't have to --

15        THE COURT:  Those are not proper objections to a

16   request for admissions, so based on that I'm striking them.

17        MR. LONERO:  Your Honor, I greatly apologize for

18   interrupting and I am well aware of the lateness of this.

19   The supplemental responses, the second supplemental responses

20   that we provided last night, which I understand counsel has

21   not had a chance to look, they take out the relevance

22   objections to literally 95 percent of those responses --

23        THE COURT:  You know I could have automatically

24   deemed them admitted, right --

25        MR. LONERO:  I understand.

1       THE COURT:  -- because you didn't do it right, but I

2  generally try not to do that.  And so you gave me the updated

3  --

4       MR. LONERO:  I would --

5       THE COURT:  -- supplemental.  Let me look --

6       MR. LONERO:  I would suggest, Your Honor, though what

7  counsel read is not completely complete because actually our

8  response does say that therefore in this circumstance, CFSI,

9  I'm using that one, therefore cannot admit or deny Request

10  Number 1.  So under those particular --

11       THE COURT:  That's still not a --

12       MS. DUMESTRE:  It's still subject to the objections.

13       THE COURT:  -- valid response.

14       MR. LONERO:  But we didn't have --

15       THE COURT:  Hold up.  That's still not a valid

16  response, the fact that you can't admit or deny.  You're

17  supposed to admit or deny.  The rule doesn't say you have an

18  option to admit or deny and say you can't do anything.

19  That's not in the rule.

20     I hate requests for admissions, but that's what they say.

21  And the purpose, as you know, is to establish what is a fact

22  and what is not.  And lawyers always try to tap dance around

23  it, which is probably why the case law is so narrow.  And I

24  can tell you, that's not a good response either under the

25  case law.

1          MR. LONERO:  I can explain, Your Honor.

2          THE COURT:  So let me look at your updated response.

3          MR. LONERO:  The relevance and prematurity

4    objections, which during our numerous conversations, is what

5    I understood counsel had the main concern with and that is

6    what she noted in her motion.  Those are what were removed.

7          THE COURT:  I don't think the other objections are

8    appropriate objections to a request for admission.

9          MR. LONERO:  I understand, Your Honor.

10         THE COURT:  And you say -- what you say is, I don't

11   know.

12         MR. LONERO:  And I don't know.  For instance -- I

13   don't -- I don't know, Your Honor, because in this instance,

14   as an example, counsel is asking us -- this is a lost policy

15   case.  It is abundantly clear -- and this was not stated --

16   the main case that counsel relies on, the Hoerner case, it is

17   abundantly clear that Tulane has the duty.  Even though I can

18   appreciate where someone may not appreciate that fact, Tulane

19   has to prove this policy and Tulane has to prove the terms

20   and provisions of the policy.  There are more cases than we

21   can count --

22         THE COURT:  But can I ask you this --

23         MR. LONERO:  And we don't have a late notice

24   provision for me to admit.  She's asking me to admit that I

25   do not have a late notice provision.

1          THE COURT:  Then you say deny because there is no

2    late notice provision in the policy.

3          MR. LONERO:  And that is essentially what --

4          THE COURT:  That is not what you said.  What you said

5    is, I don't have a clue.  You said, it's insufficient to

6    enable or to admit or deny.  I think you can admit or deny

7    based on what you just said, which is my policy does not have

8    a late notice defense, so I get to deny this and tell her

9    why.  That's what the case law says you're supposed to do.

10         MR. LONERO:  I understand, Your Honor.

11         THE COURT:  You all are making this way, way harder

12   than it has to be.

13         MR. LONERO:  I understand and appreciate that, Your

14   Honor.

15         THE COURT:  So you want a chance to make it right?

16   Because otherwise I'll strike it and it's going to be deemed

17   --

18         MR. LONERO:  I --

19         THE COURT:  -- admitted.  Which one you want?

20         MR. LONERO:  I certainly would appreciate the chance

21   to make it right.

22         THE COURT:  All right.  I'll give you 10 days to fix

23   all these problems on these requests.

24         MS. DUMESTRE:  Okay.  Request Number 10, same --

25   you're going to see the same thing if you want to look at

1   the -- the same for all three.

2        THE COURT:  I'm still looking.  Inappropriate

3   objection.  If you don't know that what she's saying is true,

4   you're obligated to deny it --

5        MR. LONERO:  I understand.

6        THE COURT:  -- and state a reason why.

7        MR. LONERO:  I understand, Your Honor.

8        THE COURT:  But that is not what you're doing, so

9   supplement Number 10.

10     What's next?

11        MS. DUMESTRE:  This is still really tied to the

12   relevance objection, but they have other things --

13        THE COURT:  I don't care about relevance.  Let's go

14   to the next one.

15        MS. DUMESTRE:  Okay.  The next one, Interrogatory

16   Number 14 --

17        MR. LONERO:  I'm sorry.  Which one?  Because I think

18   those are different.

19        MS. DUMESTRE:  Huh?

20        MR. LONERO:  Which one?  Because I think those

21   are different.

22        MS. DUMESTRE:  Yeah, Number 14 is different.

23        MR. LONERO:  So which one?

24        THE COURT:  Ten applies to all three.  Yeah?

25        MS. DUMESTRE:  All the admissions apply to all three.

1     THE COURT:  Okay.  Now we're back to -- where are we

2   back to now?

3     MS. DUMESTRE:  We're on Interrogatory Number 14 from

4   Westchester.

5     THE COURT:  Only for Westchester?

6     MS. DUMESTRE:  Uh-huh.

7     THE COURT:  Uh-huh.  I'm listening.

8     MS. DUMESTRE:  14 and 15, "have you ever been

9   involved in a claim based upon a policy that has been lost or

10  otherwise could not be located."  I limited it to the years,

11  but you didn't like that one anyway before.

12    THE COURT:  I still don't.

13    MS. DUMESTRE:  Okay.  Forget that one.

14    THE COURT:  All right.

15    MS. DUMESTRE:  Uh-huh.  Request for deduct -- Request

16  for Production Number 13, that talks about the data retention

17  policies which we've already addressed.  It just did

18  relevancy -- I separated these into the type of objections.

19    THE COURT:  I don't care.  Get to one I can rule on.

20    MS. DUMESTRE:  So I think you've already addressed

21  Number 13.  And you've addressed Number 18 as well.

22    MR. LONERO:  I'm sorry.  What was 18?  I apologize.

23    THE COURT:  Brian's got it all.  I'm going to issue

24  an order.  Don't worry about it.  You can breathe.  He's

25  taking good notes.

1          MR. LONERO:  Thank you, Your Honor.

2          THE COURT:  And if not, he'll come back and listen to

3    the tape.

4          MS. DUMESTRE:  And then throughout the -- of course,

5    he said he removed them, the premature objection that he

6    doesn't have to respond to discovery until we prove the

7    existence of the policy.  That's the purpose of discovery.

8          THE COURT:  Yeah, it is, isn't it?

9          MS. DUMESTRE:  Isn't it.

10          THE COURT:  You took that away you said?

11          MR. LONERO:  Yes, Your Honor.

12          THE COURT:  Okay.  So I don't have to rule on that.

13          MS. DUMESTRE:  All throughout?

14          MR. LONERO:  Yes.

15          MS. DUMESTRE:  Okay.  Good.  But it came last night.

16          THE COURT:  I don't care.  Get to the next one.

17          MS. DUMESTRE:  Okay.  Let's see.

18          THE COURT:  I'm not going to be on the bench all day.

19          MS. DUMESTRE:  That's okay.  Okay.  That, that and

20    that, the document speaks for itself.

21       In Request for Admissions, he --

22          THE COURT:  Which one?

23          MS. DUMESTRE:  U.S. Fire Number 15, Crum & Forster

24    Number 29.

25          THE COURT:  I'm listening.  Read it to me.

1          MS. DUMESTRE:  "Please admit that the claims asserted

2     against Tulane in the Eckert lawsuit were" best -- "based

3     upon Mr. Eckert's exposure to asbestos while employed by

4     Tulane between November 1, 1973, and September 12, 1974."

5     They responded to a request for admissions with the document

6     speaks for itself.

7          THE COURT:  Why do you need him to stipulate to what

8     you allege?

9          MS. DUMESTRE:  Well, it's a fact.  I'm trying to

10     eliminate facts --

11          THE COURT:  Who says it's a fact?

12          MS. DUMESTRE:  I'm trying to eliminate facts --

13          THE COURT:  I understand the purpose of --

14          MS. DUMESTRE:  -- at trial.

15          THE COURT:  -- a request.

16          MS. DUMESTRE:  Uh-huh.

17          THE COURT:  But how did you phrase it?

18          MS. DUMESTRE:  "Please admit that the claims asserted

19     against Tulane in the Eckert lawsuit were based upon

20     Mr. Eckert's exposure to asbestos while employed by Tulane

21     between November 1, 1973" --

22          THE COURT:  Which Eckert lawsuit?  This is an Eckert

23     lawsuit.  Is there another?

24          MS. DUMESTRE:  Oh, the underlying lawsuit brought --

25          THE COURT:  Well, that doesn't say that.

1          MS. DUMESTRE:  Uh-huh.

2          THE COURT:  That's a pretty funky request.  Were you

3    referring to the underlying lawsuit or to this lawsuit?

4          MS. DUMESTRE:  Mr. Eckert has no claims in this

5    lawsuit.  We just didn't change the caption, because you

6    don't.

7          THE COURT:  So if a -- somebody disconnected from the

8    suit came and read that, would they know what you're talking

9    about?  Because I don't think they would.  I don't think I

10   would.

11         MS. DUMESTRE:  Oh, but Mr. Lonero knew.

12         THE COURT:  But it's not based on what he knows.

13   It's based on what he's trying -- you're trying to get him to

14   stipulate to.

15         MS. DUMESTRE:  Let me see -- let me read the whole

16   thing.  Let me see what it says.

17         MR. LONERO:  If I can --

18         THE COURT:  Yeah.  Go ahead.

19         MR. LONERO:  If may I address it, Your Honor.

20         THE COURT:  Yeah.  Yeah.  Yeah.

21         MR. LONERO:  It was in all earnest the -- exactly

22   what the Court said and I worked with counsel on many files.

23   But in order to protect my client, counsel says, "please

24   admit that the claims asserted in the Eckert lawsuit" -- and

25   that's defined as "the lawsuit" -- state "that he was

1    employed by Tulane between 1973 and 1974," which does not say

2    that.  However, I did not know if counsel meant the

3    30,000 pages.

4        So what I said and here's my supplemental response, "we

5    admit that Exhibit A of the petition says," and I quoted and

6    it says, "he worked for Tulane during the 1970s."  That was

7    the best I could do.

8            THE COURT:  That's fine with me on that one.

9            MS. DUMESTRE:  Uh-huh.

10           THE COURT:  I wouldn't go any further on that one.

11           MS. DUMESTRE:  That's in --

12           THE COURT:  All right.

13           MS. DUMESTRE:  That is in the Westchester response,

14   right?

15           MR. LONERO:  That's in -- that's in all of the

16   supplements.

17           MS. DUMESTRE:  Oh, the supplements that came?

18   Because --

19           MR. LONERO:  No.  I think it's in the first -- I

20   think it's in the first supplement, but if it's not, it's in

21   the one from -- from --

22           THE COURT:  Last night.

23           MR. LONERO:  -- yesterday evening.  I can fully

24   appreciate counsel wouldn't have seen that.

25           MS. DUMESTRE:  Uh-huh.

1          MR. LONERO:  I'm not suggesting that, Your Honor.

2          MS. DUMESTRE:  I didn't get supplemental --

3          THE COURT:  I'm okay with it.  I'm okay with that

4     answer.  So let's move to the next problem.

5          MS. DUMESTRE:  I didn't get -- but Crum & Forster and

6     U.S. Fire, the reason it's still in here, I didn't get

7     supplemental responses from them until --

8          THE COURT:  Last night.

9          MS. DUMESTRE:  No.  March 23rd they sent some that

10    didn't correct all of it and then last night they sent more.

11    But March 23rd and then March 27th.  These discovery

12    responses were propounded December 1, 2017.

13         THE COURT:  I get it.

14         MR. LONERO:  For the record, counsel propounded the

15    discovery.  We had some conferences.  We provided counsel the

16    Westchester responses that was in the interest of time.

17    Counsel then filed the Motion to Compel immediately after I

18    was able to get from clients the first supplemental for the

19    Westchester and Crum & Forster, which counsel did get those

20    after the Motion to Compel.  And then yesterday I got via my

21    client the second supplementals and that was the timing of

22    it.

23         THE COURT:  I understand.

24      Next problem?

25         MS. DUMESTRE:  The evasive answers.  There are two

1   requests -- there are requests for admissions --

2        THE COURT:  What number?

3        MS. DUMESTRE:  Are you in Exhibit B, Crum & Forster?

4   They're different numbers.  I have them.  I can tell you

5   right now.

6        Crum & Forster is Numbers 13 and 14, Exhibit B, for

7   Requests for Admission.  Oh, wait, no.  That's U.S. Fire's

8   Number 13 and 14.  Crum & Forster is Number 27 and 28 and

9   Westchester is Number 27 and 28.

10        The question was "please admit that you have" -- well,

11   one of the elements -- we do have the burden of proving the

12   existence of a lost policy.  One of the elements is -- we

13   have to prove is that we had a -- made a diligent search for

14   the policies.  And the admission was request -- that you

15   admit that you have no evidence to refute the fact that

16   Tulane made a diligent search.

17        THE COURT:  How are they going to know what you all

18   did?

19        MS. DUMESTRE:  Because we produced all sorts of

20   evidence about it.  But they have no evidence.

21        THE COURT:  I don't even think that's an appropriate

22   request.  They don't -- they weren't there when Tulane did a

23   search.

24        MS. DUMESTRE:  They deposed the person who was

25   responsible for the search.  They --

1          THE COURT:  But you're asking them to characterize

2     the search as diligent.

3          MS. DUMESTRE:  Uh-huh.

4          THE COURT:  Isn't that a Court call?  That's a Court

5     call.  That's not an appropriate attempt to get a

6     stipulation.

7          MS. DUMESTRE:  That's --

8          THE COURT:  That's a weight of the evidence issue.

9          MS. DUMESTRE:  All right.  That's Number 13.

10    Number 14 is --

11         THE COURT:  I kind of want to strike Number 13.

12         MS. DUMESTRE:  Okay.

13         THE COURT:  Put that in the record, Brian, so that --

14         MS. DUMESTRE:  Number --

15         THE COURT:  -- my DJ's clear.

16         MS. DUMESTRE:  -- 14 is that you have no evidence

17    that Tulane committed fraud --

18         THE COURT:  How do you prove a negative?

19         MS. DUMESTRE:  Well, I don't have to prove the

20    negative.  They have to prove it if they think Tulane

21    committed fraud.

22         THE COURT:  Yeah, but you're asking them to stipulate

23    to it at this stage of the proceeding.

24         MS. DUMESTRE:  Only that they have no evidence.

25         THE COURT:  Well, I think they're still trying to

1    figure out what they have, so how are they going to admit to

2    what they don't have yet?  Discovery goes on until when?

3    August?

4           MS. DUMESTRE:  Your Honor, this case has been going

5    on --

6           THE COURT:  No, until June.

7           MS. DUMESTRE:  These insurers have been in the case

8    for over two years, and this is the first time -- I mean, the

9    discovery they propounded last week --

10          THE COURT:  Is fraud an -- well, fraud has to be

11   specifically pled.  Did they, like, file something saying

12   there's fraud?

13          MS. DUMESTRE:  No, Your Honor, not that I saw it.

14          THE COURT:  You don't -- read that one back again.

15          MS. DUMESTRE:  Okay.  This is number -- I'm going to

16   get the exact words.

17          THE COURT:  I thought that's what we had.

18          MS. DUMESTRE:  Well, that was just a -- let's see.

19   Request for Admission Number 28, "please admit that you have

20   no evidence that Westchester umbrella policy" --

21          THE COURT:  You don't like your own question.

22          MS. DUMESTRE:  Huh-uh.  No.  No.  It's the wrong

23   question, wrong number.

24          THE COURT:  Okay.

25          MS. DUMESTRE:  Here, Number 27, "please admit that

1    you have no evidence" -- that's not it either.  Oh, well.

2    Maybe I -- oh, it's 13.  Maybe it's 13 and 14.

3            THE COURT:  I dealt with 13 and 14.

4            MS. DUMESTRE:  No.  It's Requests for Admission.

5            THE COURT:  Oh, requests.

6            MS. DUMESTRE:  No, it's not that.  I'm sorry, Your

7    Honor, I can't find the --

8            THE COURT:  So we don't have an issue there anymore?

9            MS. DUMESTRE:  No.  Let's forget that one then.

10            THE COURT:  All right.  Let's keep it moving.

11            MS. DUMESTRE:  And, actually, I think -- I think

12    that's it.  I think we've got it all and I'll look at what he

13    sent, but if he can go directly to the three insurers he

14    represents and send me more documentation at least --

15            THE COURT:  Well, he's obligated to go search, right?

16            MS. DUMESTRE:  Right.  That's a big --

17            THE COURT:  As opposed to going through a third-party

18    and trusting that they know what's in his head and would ask

19    the same questions in the same manner in which he would and

20    also search in the same place as -- that he would.

21            MS. DUMESTRE:  Your Honor, as Mr. Lonero told you, we

22    worked together on this for weeks, weeks, and we would ask

23    for attorneys' fees because it's been so difficult to get

24    this information in line and he hasn't gone to the insurance

25    companies.  He's been giving me only RiverStone material, and

1  like I said, this was propounded in December --

2       THE COURT:  I'll say this.  You want to argue about

3  the --

4       MR. LONERO:  Yes, Your Honor.

5       THE COURT:  Go ahead.

6       MR. LONERO:  If I may address that.

7       THE COURT:  Go ahead.  Go ahead.

8       MR. LONERO:  I'm addressing, as I appreciate, Your

9  Honor --

10      THE COURT:  The fees.

11      MR. LONERO:  -- only the fees.  Excuse me, Your

12 Honor.

13      Your Honor, as I explained and I do understand and

14 appreciate the confusion and complication.  I would say the

15 following.  Number 1, counsel was kept well abreast of that

16 circumstance.  Number 2, I do appreciate what the Court is

17 saying about going directly to the companies.  From my

18 perspective and from my client, RiverStone Claims handle --

19 Claims Management Company, as complicated and confusing this

20 may seem, I am not instructed by those insurers.  I am not

21 able to go to those people --

22      THE COURT:  Yeah, but let me say this.  Yes, you are.

23 Because your client has a relationship with them that

24 benefits both.  They can make a -- they can facilitate your

25 ability to communicate with Westchester, so I ain't buying

1  that.

2       MR. LONERO:  I understand, Your Honor.  And my --

3       THE COURT:  Besides they're parties that you

4  represent.

5       MR. LONERO:  I understand, Your Honor.  My third

6  point was going to be --

7       THE COURT:  So I don't care about the legal

8  relationship issue.

9       MR. LONERO:  And my third point --

10      THE COURT:  You may.

11      MR. LONERO:  My third point was going to be, Your

12 Honor, we have a signed agreement as of this morning.  We

13 have a signed agreement that there will be responsibility for

14 this policy and we have a stipulation -- and there's a point

15 to this.  We have a stipulation that we've already worked on

16 with counsel for ACE and that we are here to present to

17 counsel for Tulane, the point of it being to dismiss all of

18 these defendants except for one.

19    My client has been diligently working and our work on

20 attempting to obtain this information --

21      THE COURT:  No, because, see, I see how this plays

22 out.  You all stipulate as between you all that you all are

23 going to be responsible for a policy that you said you don't

24 have, the book of business that you bought, and you get these

25 players out of the case, which Mary can't make you go to

1    Westchester and everybody else.  So the answer to that,

2    before you sign any deal and before they're dismissed and

3    before that's submitted to my district judge, you better go

4    to them.

5          MR. LONERO:  We --

6          THE COURT:  Because I'm going to let Judge Brown know

7    what's happening in this case because it makes me feel

8    uncomfortable.

9          MR. LONERO:  Your Honor, no, that was all with the

10   understanding that corporate depositions will be taken by --

11   all of them.

12         THE COURT:  I don't care about your corporate

13   depositions.  What I care about is the adequacy of the

14   search.

15         MR. LONERO:  I understand, Your Honor.

16         THE COURT:  And I don't want a third-party

17   controlling the ability to get to the information, and that's

18   what I see happening here.

19         MR. LONERO:  I understand and that will all be done,

20   Your Honor, with regard --

21         THE COURT:  Hold that agreement signing.  Don't file

22   no motion to dismiss until I deal with my discovery issue.

23   Because if I don't have a party, I don't have jurisdiction.

24   If I don't have jurisdiction, you've effectively blocked my

25   ability to make you go to Westchester.  I ain't having it.

1   I'm putting you and I'm putting RiverStone on notice, don't

2   play it like that.

3        MR. LONERO:  Well, I understand, Your Honor, and that

4   was not at all the point.  My point is with regard to fees --

5        THE COURT:  Well, but that's the play.  That may not

6   be the point, but that's the play.

7      I hear you.  I'm listening.

8        MS. DUMESTRE:  And, Your Honor, we haven't seen it

9   yet.  We were told that this was coming on January 24th.

10        THE COURT:  What's coming?

11        MS. DUMESTRE:  The proposed stipulation.

12        THE COURT:  I don't care about that because this

13   agreement happened just before this hearing.  Your people are

14   trying to figure out a way on how not to get you to go where

15   I'm telling you to go.  You tell RiverStone I said, stand

16   down.  I'm not playing it.

17        MR. LONERO:  I understand, Your Honor.

18        THE COURT:  What's next?

19        MR. LONERO:  With regard to the fees, Your Honor, I

20   would only say that the work and the efforts that have been

21   put in were substantially justified pursuant to Rule 37 --

22        THE COURT:  Not these objections.

23        MR. LONERO:  I'm sorry, Your Honor?

24        THE COURT:  Not a lot of your objections.

25        MR. LONERO:  With --

1      THE COURT:  A lot of your objections to me speak of

2  gamesmanship, not -- not the free flow of information that

3  we're all obligated to do to short-cut the costs in

4  litigation, the rule -- rule number one on cooperation.  I

5  don't see cooperation.  I see obfuscation.

6      So fees awarded.  Submit your bills.  Defend against her

7  bills.  Cut out your duplicates.  I -- and I'm not -- because

8  you have duplicate requests and somebody else did all this

9  typing, please don't send me billing sheets for all three of

10  these requests and admissions and production.

11      MS. DUMESTRE:  I'm sure they're combined.

12      THE COURT:  They better be because I'm going to slice

13  them.  I promise you.  I'm going to slice them.

14      MS. DUMESTRE:  I -- combined.

15      THE COURT:  Reasonable fees only.

16      MS. DUMESTRE:  Uh-huh.

17      THE COURT:  You'll get a chance to respond.

18      MR. LONERO:  Thank you.

19      THE COURT:  Maybe RiverStone will know they need to

20  stop playing this game.  They got the wrong one.  I don't do

21  that.

22      What's next?

23                (No response from parties.)

24      Have a great day.

25      MS. DUMESTRE:  Thank you, Your Honor.

1          MR. LONERO:  Thank you, Your Honor.

2                         * * * *

3     (WHEREUPON, the proceedings were adjourned at 12:21 p.m.)

4                         * * * *

5                    REPORTER'S CERTIFICATE

6          I, Nichelle N. Drake, RPR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
7  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
8  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

9

10                    ___/s/ Nichelle N. Drake___
                        Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─────────────────OFFICIAL TRANSCRIPT─────────────────
                        Page 58